**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Westfield Insurance Company, an Ohio Company,<br><br>Plaintiff,<br><br>v.<br><br>Double AA Builders, Ltd., an Arizona corporation.<br><br>Defendant. | No. CV-13-00012-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant's Motion to Dismiss Pursuant to Rules 12(b)(1), (3), (6), and (7). (Doc. 9.) For the reasons discussed below, the Court grants the Motion.[1]

## BACKGROUND[2]

This declaratory action arises from an insurance coverage dispute. Defendant Double AA is a licensed general contractor and Plaintiff Westfield is its insurer. (Doc. 1 ¶ 7.) In 2007, Double AA contracted with Harkins Theatres ("Harkins") to construct a theatre complex in North Phoenix (the "Theatre"). (*Id.*) As the general contractor, Double

---

[1] The Parties' requests for oral argument are denied because they have had an adequate opportunity to discuss the law and evidence, and oral argument will not aid the Court's decision. See *Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] The Court takes as true the allegations contained in Westfield's Complaint at this stage of the litigation. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).

AA contracted with Anchor Roofing Systems, Inc. ("Anchor") to construct the Built-Up Roofing (the "BUR") and with GAF Materials Corporation ("GAF") to provide certain roofing materials for the Theatre. (*Id.*)

On April 16, 2008. (*Id.* ¶ 8.) Anchor warrantied the BUR and agreed to repair or replace any defective work within a period of two years. (*Id.*) After the Theatre's completion, the roof developed cracks and leaks, resulting in some interior water damage to the Theatre. (*Id.* ¶¶ 9, 19.) Anchor and/or GAF made several repairs to the cracks in the BUR, but that did not resolve the issue. (*Id.* ¶ 10.)

Harkins, Double AA, and GAF investigated these continuing problems. (*Id.* ¶ 11.) Meanwhile, Harkins retained a roof consultant from WRECORP to determine the cause of the roof deterioration. (*Id.* ¶ 12.) The consultant's August 16, 2012 report identified specific reasons why the roof installation by Anchor and GAF was not proper and concluded that a combination of factors caused the roof system to fail. (*Id.* ¶¶ 12-13.) The presence of moisture prior to and during the roof installation was the strongest factor in the deterioration. (*Id.* ¶ 14.) GAF reviewed and agreed with the conclusions contained in the report. (*Id.* ¶ 15.) Level 4 Studio, the architectural firm that designed the Theatre, sent correspondence to Double AA stating that the cracks exhibited a systematic roof failure and that Harkins demanded a full replacement of the roof. (*Id.* ¶ 16.)

Double AA proceeded with the roof replacement and incurred costs of approximately $400,000. (*Id.* ¶ 17.) To remedy the problem, Double AA removed the BUR to allow moisture to dry out and then re-installed it. (*Id.* ¶ 18.) After the replacement, Double AA submitted an insurance claim to Westfield. (*Id.* ¶ 17.)

Westfield had issued an insurance policy to Double AA (the "Policy") which provided coverage beginning on August 2, 2006, and was renewed for one-year periods through August 1, 2012. (*Id.* ¶ 20.) The Policy covers "property damage" if it is caused by an "occurrence." (*Id.* at 5, §§ 1(a), (b).) "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . or [l]oss of use of tangible property that is not physically injured." (*Id.* at 9, § 17.) An

1  "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 8, § 13.) But the Policy does not cover "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" (*Id.* at 7, § 2(l).) The exclusion does not apply "if the damaged work out of which the damage arises was performed on your behalf by a subcontractor." (*Id.*)

Upon receiving the insurance claim, Westfield informed Double AA that the Policy does not provide coverage for the cost of repairing the defective roof but would provide coverage to the extent that Double AA was liable for resulting interior water damage. (*Id.* ¶ 22.) Westfield denies any obligation to indemnify Double AA because the existence of the defective roof and the cost of repairing it does not constitute an "occurrence" or "property damage" as defined in the Policy and because such expenditures are excluded from coverage. (*Id.* ¶¶ 25-26.) Double AA disputes Westfield's coverage position and has demanded that Westfield reimburse it for the costs incurred to replace the roof. (*Id.* ¶ 23.)

On January 3, 2013, Westfield filed this action pursuant to the Federal Declaratory Judgment Act ("FDJA"), 28 U.S.C. § 2201, for a judicial declaration that it has no obligation to defend or indemnify Double AA in connection with any claims for the repair or replacement of the defective roof. (Doc. 1.) On February 19, 2013, Double AA filed an action in Maricopa County Superior Court with claims against Westfield for breach of contract and a declaratory judgment relating to the policy coverage issue. (Doc. 9-1 at 13.) In that pending state action, Double AA also brings claims against Anchor for breach of contract, negligence, and indemnity for failing to properly install the BUR and against Anchor's insurer, Preferred, for breach of contract and a declaratory judgment for damages caused by the roof failure. (*Id.*) On the same day, Double AA filed this motion to dismiss the Complaint and requested the Court to decline jurisdiction in this matter. (Doc. 9.)

/ / /

**DISCUSSION**

**I.   LEGAL STANDARD**

The FDJA states that "[i]n a case of actual controversy within its jurisdiction [with noted exceptions] . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The FDJA "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). As the Ninth Circuit has explained, "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Amer. Nat. Fire Ins. Co. v. Hungerford*, 53 F.3d 1012 (9th Cir. 1995*), overruled on other grounds by Gov't. Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1227 (9th Cir. 1998) (stating that "the Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority'") (internal citation omitted).

When determining whether to abstain from an FDJA action, the Ninth Circuit considers the factors set out by the Supreme Court in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942). "The district court [1] should avoid needless determination of state law issues; [2] it should discourage litigants from filing declaratory actions as a means of forum shopping; and [3] it should avoid duplicative litigation." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc) ("The *Brillhart* factors remain the philosophical touchstone for the district court.") (internal citation omitted). The *Brillhart* court explained that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties" and that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." 316 U.S. at 495.

The *Brillhart* factors are not exhaustive, and courts should also consider: (1)

whether the declaratory action will settle all aspects of the controversy; (2) whether the action will serve a useful purpose in clarifying the legal relations at issue; (3) whether the action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; (4) whether the use of the action will result in entanglement between the federal and state court systems; (5) the convenience to the parties; and (6) the availability and relative convenience of other remedies. *Dizol*, 133 F.3d at 1225 n.5.

## II. ABSTENTION FACTORS

### A. Needless Determination of State Law Issues

Westfield brings this declaratory action to resolve one issue: whether Double AA is entitled to reimbursement from Westfield under its general liability policy for the expense that Double AA incurred in repairing the defective roof. Insurance coverage and contract interpretation are fundamentally questions of state law and "federal courts should decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court unless there are circumstances present to warrant an exception to that rule." *Employers Reinsurance Corp. v. Karussos*, 65 F.3d 796, 798-99 (9th Cir. 1995) *overruled in part on other grounds by Dizol*, 133 F.3d at 1227 (internal citation omitted). The Ninth Circuit has emphasized the general rule that insurance coverage actions belong in state rather than federal court and "the traditional rule that 'states ha[ve] a free hand in regulating the dealings between insurers and their policyholders.'" *Karussos*, 65 F.3d at 799 (citing *SEC v. National Securities, Inc.*, 393 U.S. 453, 459 (1969)).

If it proceeds with this action, the Court will be required to determine issues of state law when interpreting the policy, any ambiguity therein, and whether Double AA's claims are covered. That determination is needless in light of the proceeding in the state court forum in which these issues can and will be resolved.

Westfield contends that although the coverage dispute is governed by state law, the Court need not address *unsettled* state law issues because coverage for the correction of defective workmanship has already been determined by Arizona state courts. That may

- 5 -

be true, however, the question before the Court is not whether it *could* adjudicate the insurance coverage issue, but whether such adjudication would be "needless" because that issue could be adjudicated in the pending state court proceeding. Westfield does not dispute the state action would dispose of all issues raised by it in the present declaratory suit. State court is the preferred forum for resolving issues of insurance coverage. *See Karussos,* 65 F.3d 796, 798-799. Thus, this factor weighs against exercising the Court's jurisdiction to hear this case.

### B. Forum Shopping

"[F]ederal courts should generally decline to entertain reactive declaratory actions." *Dizol*, 133 F.3d at 1225. In *Continental Casualty. Co. v. Robsac Industries*, an insurer filed a declaratory judgment action in federal court "during the pendency of a non-removable state court action presenting the same issues of state law." The court held that the insurer did so merely to obtain "a tactical advantage from litigating in a federal forum" and that the "defensive or reactive" nature of the insurer's action warranted dismissal. 947 F.2d 1367, 1371-72 (9th Cir. 1991), *overruled in part on other grounds by Dizol*, 133 F.3d at 1220.

Double AA argues that although Westfield could have filed the current action in state court, it "rushed to file this action within days after meeting with Double AA to discuss coverage." (Doc. 9 at 7.) Westfield contends that the timing of its Complaint is not indicative of forum shopping because the Parties had been communicating for months about the coverage issue and it became clear that declaratory relief was required.

This case is distinguishable from the "reactive" action in *Robsac* in which the state action was pending when the insurer filed the federal declaratory action. Further, Westfield rightly asserts that the mere act of invoking federal jurisdiction when it is proper does not evince forum shopping. *See First State Ins. Co. v. Callan Associates, Inc.*, 113 F.3d 161, 162 (9th Cir. 1997) (*"*Although occasionally stigmatized as 'forum shopping,' the desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute implementing Article III.") Yet

jurisdiction for actions brought pursuant to the FDJA is discretionary and the Court must decide whether it is proper to exercise such jurisdiction in this case. 28 U.S.C. § 2201(a); *Wilton*, 515 U.S. at 288.

Westfield contends that it is Double AA that is forum shopping since it filed the state action after Westfield filed this action and joined a non-diverse defendant, Anchor, so that the state action would not be removable to federal court. Westfield claims that the tort claims against Anchor, the subcontractor, are not related to the insurance claims against Westfield and Double AA does not have a current dispute with Anchor. As is true for Westfield's action, the timing of Double AA's state action is not dispositive as to forum shopping. *See Allstate Indem. Co., Inc. v. Reidel*, CV 10-8158-PHX-DGC, 2011 WL 744891 at *3 (D. Ariz. Feb. 24, 2011); *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802–04 (9th Cir. 2002) (noting that in *Wilton*, 515 U.S. at 279–80 "the Court suggested that the order of filing is legally insignificant when it ruled in favor of a state action filed several weeks after a federal action."). Further, joinder of Anchor in the state action is not necessarily "defensive maneuvering" since the tort and insurance claims are based on the same underlying facts regarding the defective roof and subsequent repair. It is telling that six weeks after Westfield filed this declaratory action in federal court, Double AA filed a similar action in state court and moved to dismiss this Complaint on the same day. It can be stated that both parties have engaged in some "procedural fencing" to get to their preferred forum. Thus, this factor is neutral in the determination.

### C. Duplicative Litigation

In cases where there is a parallel state proceeding involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Dizol*, 133 F.3d at 1225 (citing *Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361, 1366-67 (9th Cir. 1991)). Westfield's federal action, however, was filed before the state action. There is "no presumption that the declaratory action should be heard in state court." *Keown v. Tudor Ins. Co.*, 621 F. Supp. 2d 1025, 1038 (D. Haw. 2008) (citing *Huth*, 298 F.3d at 803–04). This case "will

1 be disposed of in its entirety either in state or federal court." *Huth*, 298 F.3d at 803.
2 Therefore, this factor is also neutral in the determination.

### D. Other Factors

The other factors outlined in *Dizol*, 133 F.3d at 1225 n.5, do not meaningfully impact the jurisdictional analysis here. Double AA contends that this action will not settle all aspects of the controversy. The factual issues of the BUR failure's cause, whether it was the workmanship of Double AA or its subcontractor, and the necessity of preventative repairs will be determined in the state action. Westfield states that the only dispute between the Parties is about policy coverage for costs incurred from repairing the roof. It is possible that the Court may address the cause of the roof failure in order to resolve the coverage dispute, and thus settle all aspects of *this* controversy. But such a determination is better made in the state action where there are concomitant tort and insurance claims against the subcontractor and its insurer. If the Court retains jurisdiction there is a risk of "piecemeal" litigation.

This declaratory action will not clarify the legal relations at issue more than the state action with a well-developed factual record. A similar state remedy for declaratory relief is available to Westfield. *See, e.g.*, A.R.S. § 12-1831. In fact, Double AA requests declaratory relief against Westfield on the very same issue in the state action.

Because the parallel actions involve overlapping issues and parties, there is a possibility of inconsistent factual and legal determinations. This could lead to "entanglement" between the two systems. As for convenience to the parties, the cause of the roof failure and cost to repair it are pivotal factual issues in this case. Determining those issues would necessitate discovery from the parties involved in constructing the Theatre, including the subcontractor, architect, and property owner. Further, the subcontractor's insurer may have an interest in being involved in such determination. These non-diverse parties have been or may be joined in the state action. Westfield argues that this Court is a convenient forum because Westfield is from another state and does not want to be dragged into an action involving unrelated claims against other

parties. The Court does not find that the other claims are wholly unrelated.

It was Westfield's prerogative to file this action in federal court; however, the exercise of jurisdiction is discretionary in this matter. As the Court has not expended significant resources on this action, it is prudent to decline jurisdiction and allow the state action to proceed.

## CONCLUSION

The Court declines to exercise jurisdiction over this declaratory action. This insurance coverage dispute governed by state law is properly adjudicated in the parallel state court proceeding where Westfield may pursue a similar state remedy.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 9), pursuant to Rules 12(b)(1), (3), (6) and (7) is **granted**. The Clerk of Court is directed to terminate this action and enter judgment accordingly.

Dated this 12th day of August, 2013.

*A. Murray Snow*
G. Murray Snow
United States District Judge